No. 1866.—EMILY L. SHIFF, Tutrix, *v.* THE SUCCESSION OF ALEXANDER LESSEPS—NORBERT SOULIE, Intervenor.

A contract between a planter and a factor or commission merchant, whereby the latter binds himself to furnish the necessary supplies for the working of the plantation, not to exceed a specified amount, and to receive and sell the products of the place for the benefit of the planter, is a contract of agency on the part of the merchant, which terminates at the death of the agent. By the death of the agent, in such a case, the planter is absolved from all obligations to continue the contract, and the heirs of the agent are not bound on the contract. Such an agreement is personal, and not heritable.

Where the agent of a planter has died, and the surviving wife forms a commercial partnership, with third parties, who assume the contract of agency which was terminated by the death of the agent, it was held by the court that the rights of the heirs to the estate of their deceased father became fixed at his death, and that the surviving wife, in her capacity of tutrix, could not bind their estate for liabilities of the new firm growing out of the contract of agency which terminated at the death of their father.

A PPEAL from the Second District Court of New Orleans. *Duvigneaud,* J. *L. Castera* and *C. Hunt,* for intervenor, appellant. *P. H. Morgan,* for appellee.

TALIAFERRO, J. This suit was instituted by the plaintiff in her representative capacity of tutrix to her minor son, sole heir of her deceased husband, Edward Shiff, to enforce the payment of $15,294, with interest, by seizure and sale of certain mortgaged property belonging to the succession of Alexander Lesseps, deceased, and to Auguste Lesseps.

Norbert Soulié intervened, averring that he is the owner and holder of notes against the succession of Alexander Lesseps and Auguste Lesseps to the amount of $46,201; that these notes are a part of the same series to which belong those held by the plaintiff, amounting to $15,294, and which she is aiming to enforce the payment of; that all these notes are of the same date, and their payment secured by a con-

·current mortgage. The intervenor alleges that from the proceeds of the crops raised on the plantations mortgaged he has not received his *pro rata* share as he was entitled to under the contract between the Lesseps (father and son) and Edward Shiff, the factor, in his lifetime, of the Messrs. Lesseps. He prays that the claim of the plaintiff be rejected, or at least greatly reduced, and that he have judgment against her decreeing that, in the event it should appear that plaintiff has any valid claim against the defendants, the same be paid over to him to the ·extent of $9067 93, with interest, etc.; and in default thereof, that he have, out of the proceeds of sale of the mortgaged property, the said amount, which he claims to be due to him from the estate of Alexander Lesseps and Auguste Lesseps, if not recovered from the plaintiff.

Auguste Lesseps also intervened, sustaining the position assumed by Norbert Soulié, and concluding with a prayer analogous to his.

The defense is, that the claims of the intervenor, if valid, are founded on transactions between him and other persons, to which the minor was not and could not be a party; that if the intervenor have any just claim against the succession of Edward Shiff, he must prosecute it in the regular way; that he can not defeat the plaintiff's right to proceed in the collection of the mortgage notes belonging to the minor by setting up larger claims under the same mortgage.

There was judgment in the court below in favor of the plaintiff for the amount claimed, with an order that the mortgaged premises be ·seized and sold to pay the debt, interests and costs, and that the intervention be dismissed.

From this judgment the intervenor, Soulié, appealed

We learn, from a pretty voluminous record, that in the early part of the year 1859, the Lesseps (father and son), to secure the payment of an indebtedness to Edward Shiff of a little more than one hundred ·thousand dollars, executed ninety-eight promissory notes, of various ·amounts, and maturing at different periods. The notes were drawn jointly and severally to the order of and indorsed by Auguste Lesseps, and their payment secured by mortgage on two sugar plantations near New Orleans. It was agreed that Edward Shiff should be the commission merchant and factor of the mortgagors, to furnish the plantations with the usual and necessary supplies, not to exceed twelve thousand dollars annually, to sell the crops, and after first paying the expenses, to appropriate the net proceeds *pro rata* to the payment of the notes as they became due. Three crops only were thus appropriated—those of ·the years 1859, 1860 and 1861. Edward Shiff died in October, 1860, so that the crop of 1859 was the only one that he disposed of.

After the decease of Edward Shift, a new firm was established, under the name of E. L. Shiff & Co. The business of the two plantations ·was carried on in the same manner with the new firm as it had been

conducted during the lifetime of Edward Shiff, and under the same contract. The new firm disposed of the crops of 1860 and 1861.

The intervenor predicates his claim upon the hypothesis that the decease of Edward Shiff made no change whatever ·in the business arrangements entered into by him with the Lesseps, and consequently that his representative or heir continued to transact in his place and stead, the affairs of the two plantations, furnish them with supplies, sell the crops, and apply the net proceeds according to the stipulations in the written contract between the original parties. In other words, that the obligation entered into by Edward Shiff was heritable, and therefore obligatory upon the heir to execute it on the part ·of his ancestor. Article 1994 of the Civil Code declares that, "Every obligation shall be deemed to be heritable as to both parties, unless the contrary be especially expressed, or necessarily implied from the nature of the contract."

The obligation entered into by Edward Shiff seems clearly to have been one of agency on his part. Then, as mandatary, his contract was at an end at his death. C. C. article 2996. The Lesseps were no longer bound by that contract. Their obligation to pay their notes was not changed; they were, however, at liberty to select another agent to perform the functions exercised by Edward Shiff. They seem to have done this. They continued the business with E. L. Shiff & Co., of which firm the widow of Edward Shiff, it appears, was a member.

Auguste Lesseps, in ·his testimony, says: "Mr. Shiff died in 1860. I came to the city and had a talk with Mr. Degruy on the subject. He said he would continue the same transactions as before; by transactions he meant selling the crops of the Monsecours plantation, and paying the notes due on the plantation. Mr. Degruy told me when the house of E. L. Shiff was formed that it did not change my position at all, and that I should ship my crops to them; that the house of E. L. Shiff would always pay the notes given to the house of Edward Shiff & Co. and B. Soulé, the intervenor in this case, whenever they would have funds."

We are at a loss to see how the minor heir of Edward Shiff is bound by this agreement between third parties. His mother, in her own right and individually, was a member of the firm of E. L. Shiff & Co.; but as the natural tutrix of the minor, she was without right, if she had been so inclined, to involve the minor in the hazards and risks incident to mercantile adventure. To constitute a minor a member of a commercial firm is, we imagine, unusual; and certainly it could only be done legally upon the consent of his relatives, duly convoked in family meeting, and after mature deliberation and reasons assigned for it; and lastly, after the approval of the proper court, by a formal judgment sanctioning it. None of these proceedings were taken. C. C. article 348.

We are referred to the case of Ferguson et al. *v.* Thomas et al., 3 N. S. 76, as a parallel case with the one before us, and as sanctioning the ground taken by the intervenor. In that case Ferguson and Rich gave time to their debtors to pay certain bonds already due, on condition the debtors would, before a given time, furnish a certain amount of cotton to pay the bonds. Ferguson & Rich, under the agreement, were to ship the cotton, and when sold, to apply the proceeds to the payment of the bonds. Rich died before the delay expired, and the debtors, when sued on their obligation, plead that the contract was personal to Rich, who was represented by his mother and heirs. The court decided differently. It regarded the promise as merely to make a *dation en payement*, and saw nothing in the agreement which gave it the character of a personal obligation. It said: "An engagement to ship cotton may be performed by any one; the qualities of mind are not the leading consideration that induced the contract."

In the case under consideration, the agency was personal to Edward Shiff. The relation of the parties was that of planter and factor. The contract was that of mandate. It ceased at the death of the mandatary, and was not heritable. His minor son did not, by effect of law, become the mandatary of the Lesseps. If, by the agency of Edward Shiff, he became liable to the intervenor, the latter has the right to pursue his heir, who succeeds to his father's succession incumbered with its obligations. If, through the agency of E. L. Shiff & Co., the intervenor has been deprived of his portion of the proceeds of crops destined for the payment, rateably, of the notes secured by a common mortgage, his recourse is upon that firm. Holding notes to be paid concurrently with those of the minor, the sale of the mortgaged property upon the application of the plaintiff, acting for the minor, can work him no wrong, and he can not prevent the enforcement of the minor's rights.

From these considerations, we concur in opinion with the court below.

It is therefore ordered, adjudged and decreed that the judgment of the district court be affirmed, with costs in both courts.